# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                            Case No.:   8:16-CR-00197-T-35AEP

**FRANKLIN JACKSON MINA VALENCIA**
_____/

## SENTENCING MEMORANDUM IN SUPPORT OF
## A DOWNWARD VARIANCE PURSUANT TO 18 U.S.C. §3553(a)

COMES NOW, the Defendant, FRANKLIN JACKSON MINA VALENCIA, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2 and 18 U.S.C. §3553(a), and hereby files this Sentencing Memorandum in support of a reasonable sentence, which is no greater than necessary to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a)(2).   As grounds in support thereof, Mr. Valencia shows as follows:

### FACTUAL AND PROCEDURAL HISTORY

Mr. Valencia is a 22-year-old Ecuadorian national who was born on May 28, 1985. Like the majority in Ecuador, he was grew up very poor.  Mr. Valencia's mother was not working outside the home but took care of six children.   His father was a teacher and the family could barely survive on a teacher's salary.  Despite being extremely poor, Mr. Valencia went to school and had a pretty normal childhood, for an Ecuadorian boy. However, everything changed when his father decided to start another family and abandoned his wife and six children.   Mr. Valencia and his five brothers and sisters were left without any means of survival.   Mr. Valencia's mother tried her hardest to provide for the whole family but she was not always able to earn enough money to buy food.   Mr. Valencia had to quit school

and start working as a fisherman in order to help his mother. He did not make much – about $400.00 to $500.00 a month - barely enough to afford the basic necessities.

A couple of years later, Mr. Valencia started a family of his own; he had a son with an Ecuadorian woman named Rosa. Their relationship lasted for over 5 years but even after they broke up, Mr. Valencia, unlike his own father, continued to support his son Jael.

So when an opportunity to make a very considerable amount of money in a relatively short amount of time knocked on the door, Mr. Valencia, who spent most of his life in poverty, could not resist it. He was very young and immature and probably failed to completely understand the consequences of his action. He was hired to transport a load of cocaine from the coast of Colombia to the coast of Costa Rica.

Mr. Valencia was initially hired and paid to perform duties of a crewmember. However, at the last minute, the captain who was hired previously, backed out of the trip and Mr. Valencia was asked to take over the duties of the captain.

Mr. Valencia did not know the details of the whole operation. Mr. Valencia did not participate in the planning of the smuggling operation and was ordered to follow instructions given to him by the individual who hired him. Additionally, he had no ownership in the cocaine that he was being paid to transport it from point A to point B. He received approximately $3,271.00 as an up-front payment and neither he nor his family ever received any of the additional funds he was promised.

Unfortunately for Mr. Valencia and his family, on April 19, 2016, the go-fast vessel was spotted by the marine patrol craft approximately 220 nautical miles south of Panama in the Eastern Pacific Ocean. PSR ¶12. The United States Coast Guard (USCG) launched a helicopter and deployed a boarding team. PSR ¶12. The USCG interdicted three go-fast

vessels; one of them was "Pardo, a go-fast that Mr. Valencia was on. The other two go-fast vessels were subsequently released because they had no drugs on board. On board one of the vessels that was ultimately released was a person known to the FBI as "Banderon" - one of the organizers of the drug smuggling operation.

The USCG recovered approximately 675 kilograms of cocaine from the ocean and the 3-man crew including Mr. Valencia was transported to the Middle District of Florida for prosecution. PSR ¶13.

On May 13, 2016, twenty-four days after the initial interdiction, Mr. Valencia was brought to St. Petersburg, Florida. Once in the Middle District of Florida, all three crewmembers were charged by Indictment with Conspiracy to Possess with the Intent to Distribute 5 Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States. PSR ¶¶1 - 3. Prior to being indicted, Mr. Valencia immediately began to cooperate with the government; he entered a guilty plea on July 22, 2016, pursuant to a written plea agreement. PSR ¶5. On August 8, 2016, this Court accepted Mr. Valencia's guilty plea and adjudicated him guilty. PSR ¶9. The sentencing hearing in this cause is set for Thursday, November 10, at 10:00 a.m.

## REQUEST FOR A REASONABLE SENTENCE

The guideline provisions are, as the Court is well aware, only advisory and they cannot be presumed reasonable. Though the Court must consider the guideline provisions along with a broad range of factors, including the nature and circumstances of the offense and Mr. Valencia's personal history and characteristics, it is not obligated to follow those provisions. *United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Nelson v. United States*, 555 U.S. 350 (2009). Thus, the Court has great

discretion in sentencing Mr. Valencia, and in fashioning an appropriate, individualized sentence for him.  The only restriction 18 U.S.C. § 3553(a) places on the Court is the so-called "parsimony" provision, noted above, which requires this Court to impose a sentence only long enough to achieve the purposes of sentencing, and no longer.

In light of the mitigating history and characteristics of Mr. Valencia as well as the facts and circumstances surrounding the non-violent nature of his offense, it is respectfully suggested that a sentence of 108 months to be followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. §3553(a).[1]  Mr. Valencia is a 22-year-old, impoverished Ecuadorian national who committed this serious offense primarily for financial reasons.  A 108-month term of imprisonment will be sufficient punishment for Mr. Valencia who, prior to this case, has never spent a day in prison.  While he has been incarcerated, he has found out that his fiancée had a baby girl.  Additionally, Mr. Valencia has no prior criminal history or contacts with law enforcement; he became involved in the present, non-violent activity because he was young and very immature and he wanted his child and siblings to have a better life than he did.

While Mr. Valencia's offense is non-violent in nature, it cannot be disputed that he was involved in a crime that involved the attempted transport of a large quantity of cocaine, which would support the imposition of a significant term of incarceration.  However, a sentence greater than 108 months' imprisonment, to be followed by a 5-year term of supervised release, would be "greater than necessary" to address the seriousness of Mr.

---

[1] After granting a 2-level minor role reduction and a 2-level U.S.S.G. §5K1.1 reduction, a 108-month sentence would fall at the lower end of Mr. Valencia's otherwise advisory guideline imprisonment range of 108-135 months.

Valencia's criminal behavior, especially in light of his history and characteristics, his motivation for becoming involved in this unlawful activity, his mitigating role in the offense, and his cooperative efforts.

Prior to the incarceration in the present case, Mr. Valencia has never spent a day in jail. Being incarcerated for 108 months, without an opportunity to see his family, his son and new-born daughter, will both specifically deter Mr. Valencia and others from future similar criminal conduct. During the 108 moths that he will spend in prison, Mr. Valencia will not be visited by his family, he won't see his new-born daughter, nor will he see his son, who is currently 4 years old. If Mr. Valencia's son's health deteriorates, Mr. Valencia won't be able to do anything about it because he is serving a very lengthy prison sentence. Being incarcerated for such a long time for an individual who never spent a day in prison in his life, and not being able to communicate with his family, is a very adequate deterrent factor.

Mr. Valencia is mindful that he has committed a serious crime and that he needs to be punished. A term of imprisonment of 108 months to be followed by a 5-year term of supervised release would provide "just punishment" for the offense, would "reflect the seriousness of the offense," and would "promote respect for the law." Additionally, such a sentence will reasonably reflect Mr. Valencia's mitigating role in this case, his cooperative efforts, his history and characteristics and will also more than adequately punish him for his non-violent, although very serious criminal activities. At the same time, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Valencia as an individual and appropriately taken into consideration his unique human failings which mitigate his crime and his punishment.

WHEREFORE, the Defendant, FRANKLIN MINA VALENCIA, respectfully moves this Honorable Court to impose a total sentence no greater than 108 months of incarceration to be followed by a 5-year term of supervised release based upon the factors enumerated in 18 U.S.C. §3553(a).

DATED this 21[th] day of October, 2016.

        Respectfully submitted,

        DONNA LEE ELM
        FEDERAL DEFENDER

        */s/ Irina Hughes*
        Irina Hughes
        Assistant Federal Defender
        Florida Bar No. 0066198
        400 North Tampa Street
        Suite 2700
        Tampa, Florida 33602
        Telephone:    (813) 228-2715
        Facsimile:    (813) 228-2562
        Email:    irina_hughes@fd.org

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of October, 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Taylor G. Stout.

        */s/ Irina Hughes*
        Irina Hughes
        Assistant Federal Defender