UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:16-cr-197-T-35AEP

FRANKLIN JACKSON MINA VALENCIA
ROBERT ALONSO PALACIOS ORTIZ
RUBEN ALBERTO MONTANO CASTRO

**UNITED STATES' SUBMISSION CONCERNING
POLICIES RELATING TO SUBSTANTIAL ASSISTANCE**

The United States of America submits the following information to the

Court in response to the Court's request at the December 6, 2016, sentencing

hearing of Ruben Alberto Montano Castro.  As discussed more fully below,

the Court requested that the United States provide information concerning

policies relating to the filing of "substantial assistance" motions in cases

similar to the instant case.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

This case involves three defendants who were apprehended on the high

seas in the Eastern Pacific Ocean on April 19, 2016, as they transported 675

kilograms of cocaine on a "go-fast" boat.  The captain of the vessel was

Franklin Jackson Mina Valencia (Mina), and the crew members were Robert

Alonso Palacios Ortiz (Palacios) and Ruben Alberto Montano Castro

(Montano).  The defendants had departed from Colombia with their cocaine shipment, which they intended to deliver to other drug traffickers off the coast of Costa Rica.  The United States Coast Guard interdicted the defendants' boat approximately 220 nautical miles south of Panama.  The defendants were working for, and trusted members of, a large-scale international drug cartel based in Colombia.  Using a wholesale value of $30,000 per kilogram of cocaine in the United States, the value of the drug shipment would have been over $20 million.

A grand jury indicted the defendants on May 4, 2016.  Doc. 1.  The indictment charged the defendants with:  (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) (Count One); and (2) possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii) (Count Two).  Doc. 1.  These Title 46 offenses were enacted as part of the Maritime Drug Law Enforcement Act (MDLEA).

The indictment charged the defendants with a quantity of cocaine (5 kilograms or more) that necessarily triggered the 10-year, mandatory

minimum penalties.  That charging decision is in accordance with the current policies of the Department of Justice, which mandate charging mandatory minimum penalties for individuals who have significant ties to large-scale drug trafficking organizations, gangs, or cartels.[1]  It is indisputable that these defendants, who were transporting 675 kilograms of cocaine on behalf of an international drug cartel, fall squarely within this policy requirement.

All three defendants entered into plea agreements with the United States that contained the standard substantial-assistance provisions found in most plea agreements offered by the U.S. Attorney's Office for the Middle District of Florida (MDFL).  Doc. 24 at ¶ 10; Doc. 32 at ¶ 10; Doc. 44 at ¶ 10. This provision requires defendants to "cooperate fully with the United States in the investigation and prosecution of other persons . . . in connection with the charges in this case and other matters."  *Id.*

Whether the defendant completes cooperation before or after sentencing, this provision requires the MDFL to consider whether the cooperation qualifies as "substantial assistance" in accordance with our Office's policy, thereby warranting a United States' motion pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35(b).  *Id.*  The provision further

---

[1]Justice Department policies are not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding.  *See United States v. Caceres*, 440 U.S. 741 (1979).

provides that that defendant understands that whether his or her cooperation constitutes "substantial assistance" rests in the sole discretion of the MDFL. *Id.* A related provision requires the MDFL to "make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances." Doc. 24 at ¶ 11; Doc. 32 at ¶ 11; Doc. 44 at ¶ 11.

Over the past 15 years or more, the MDFL has prosecuted hundreds of cases involving the maritime interdiction of cocaine shipments on the high seas. These cases involved fishing vessels, freighters, sailboats, cargo boats, speed boats (commonly referred to as "go-fast" boats), and self-propelled, semi-submersible (SPSS) vessels. Since October 2015, our office has prosecuted over 150 such cases, which are, at times, referred to as "boat" cases. Generally speaking, in a case such as the instant prosecution where there are three defendants in a go-fast boat literally sitting on hundreds of kilograms of cocaine, the need for, and value of, cooperation within that case is limited. While the MDFL currently prosecutes many more "boat" cases than any other district, other districts also prosecute these types of cases, including the District of Puerto Rico, the Southern District of Florida (SDFL) and the Southern District of New York (SDNY).

Over the past 15 years, the sentences imposed in the MDFL with respect to captains, crew members, and "load guards" (*i.e.*, representatives of the drug cartels sent to oversee the shipment of cocaine) have largely followed the sentencing guidelines, even after they became advisory.  Absent a reduction for substantial assistance, the presence of firearms, or other aggravating or mitigating factors, crew members face a low-end guideline sentence of 135 months' imprisonment and captains face a low-end guideline sentence of 168 months' imprisonment.  These guideline calculations are also consistent with relevant case law on issues such as a defendant's role in the offense. *See, e.g., United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999) (*en banc*).

Oftentimes, but not always, the first defendant who cooperates and is willing to testify, who would establish at trial that his co-defendants were knowing and willing participants in the drug smuggling venture, receives the benefit of a two-level, substantial-assistance motion.  Once a defendant agrees to plead guilty and cooperate, co-defendants usually do the same. Thus, there is a value to the United States (and to the judiciary) with respect to the expeditious resolution of these cases through plea negotiations.  This practice, well known by defense counsel, also encourages future defendants to seek to cooperate early.

Also relevant to the ultimate sentences imposed in cases prosecuted under the MDLEA is the fact that, absent a substantial assistance motion, case law in the Eleventh Circuit precludes the sentencing court's use of the "safety valve" provisions of section 5C1.2 to sentence a defendant below the 10-year, mandatory minimum. *See United States v. Pertuz-Pertuz*, 679 F.3d 1327 (11th Cir. 2012). There is similar case law in the Ninth Circuit, *United States v. Gamboa-Cardenas*, 508 F.3d 491 (9th Cir. 2007), and a recent district-court decision in the District of Columbia. *United States v. Mosquera-Murillo*, 172 F.Supp.3d 24 (2016).

Any viable and just law enforcement strategy with respect to the investigation and prosecution of drug cartels must target those who are responsible for recruiting, paying, and directing the crews of the boats transporting cocaine for eventual distribution on the streets of the United States, as well as the leadership within the organization. Such a strategy of climbing the hierarchy within these violent, transnational, organized-crime enterprises requires witnesses willing to testify in court and the expenditure of significant resources over an extended period of time. Because of the ongoing success in the MDFL with respect to the prosecution of thousands of defendants involved in transporting cocaine shipments, our Office has also

been successful in prosecuting the supervisors, organizers, and leaders within the drug cartels.

At the sentencing for each of the three defendants in this case, the United States informed the Court regarding the nature and extent of the defendants' cooperation.  The United States filed motions for downward departures pursuant to section 5K1.1 on behalf of defendants Mina and Palacios seeking a two-level departure from the sentencing guidelines based on substantial assistance.  The motions recognized their cooperation with respect to the investigation and prosecution of this case.  Docs. 66 and 67.  The similar, very early timing and nature of the cooperation provided by those two defendants warranted the filing of motions for both defendants.

As noted by the United States at Montano's sentencing hearing, Montano was "differently situated" from his co-defendants "in the substance and timing" of the cooperation. Tr. at 14.  In fact, both of these defendants cooperated from the very first day they were brought to the MDFL through their post-*Miranda* statements on May 13, 2016.  Mina's and Palacios's plea agreements are dated June 14 and June 15, 2016, respectively.

By contrast, Montano gave false information during his post-*Miranda* interview on May 13, 2016, and his plea agreement is dated July 25, 2016. Further, Montano's proffer interview did not take place until September 8,

2016 (nearly 4 months after his co-defendants' initial cooperation with law enforcement).  In his proffer interview, he provided limited information relating to the offense conduct.

The Court sentenced Mina (who was the captain) and Palacios on November 10, 2016.  At those hearings, the Court granted the United States' 5K1.1 motions and awarded one level more than the two-level recommendation, for a total of three levels.  In addition to granting the two-level reduction for compliance with the "safety valve," the Court also awarded each defendant a minor-role adjustment and a one-level downward variance. The Court sentenced Mina to 57 months' imprisonment and Palacios to 46 months' imprisonment.

The Court sentenced Montano on December 6, 2016.  At the hearing, the United States advised the Court that the timing and nature of any information he provided did not rise to the level of "substantial assistance" warranting a section 5K1.1 motion.  Because any truthful information provided by Montano came months after his co-defendants' cooperation, there are no facts that the United States could have represented to the Court with respect to Montano that would have been sufficient to establish that he had rendered "substantial assistance." Simply put, he was the third defendant in a three-defendant "boat" case to agree to cooperate.  As a result, his information

did not help in the investigation or prosecution of any other person or have any other meaningful value. In accordance with the holding in *Pertuz-Pertuz*, the Court could not sentence the defendant below the 10-year, mandatory minimum sentence, which is the sentence imposed by the Court (after varying downward from the guidelines range of 135 to 168 months).

To be sure, the United States is not unsympathetic to the personal circumstances of many of the defendants (*e.g.*, lack of formal education and poverty) who are prosecuted as a result of their voluntary and knowing decision to transport large shipments of cocaine on the high seas. Irrespective of their personal circumstances, these captains and mariners are critical and trusted members of the international drug cartels that flood our streets with cocaine, opiates, and other drugs, while at the same time wreaking violence, corruption, and destruction within their own countries. As noted in the MDLEA, Congress declared that this criminal activity "is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501.

## II.  COURT'S INQUIRY

During the sentencing hearing of Montano, the Court acknowledged that the decision whether to file a substantial assistance motion is "left solely

to the discretion of the government."  Tr. at 15.  The Court stated that "[t]here is not anything the Court can do about it other than to ensure that the decision is not a decision that is unconstitutional or discriminatory."  *Id.*  The Court found that the decision not to file a section 5K1.1 motion for Montano was "not discriminatory or unconstitutional" but that it was "unfair" and "unfortunate."  *Id.*

With respect to the specific inquiry as it relates to this submission, the Court stated:

> I have asked the government to tell me whether its policy of only giving 5K motions to one defendant typically and another one when it chooses is consistent with the national policy or even consistent with other offices in the district and other offices in the circuit, and I still don't have that information.

> * * *

> Because there are also these cases prosecuted in the Southern District of Florida and they are also prosecuted, I believe, in the Southern District of New York, based upon what I see the case law emanating.

> So, if you could please get me a survey how they handle 5K motions in those jurisdictions, it would help the Court, because one of the things that the guidelines teach, if they don't teach anything else, is there shouldn't be disparity at sentencing. And that's not just disparity among people who fall within the

authority of one AUSA, but I assume it means disparity in
sentencing similar cases all around.

I've gotten enough information to know that we are
different; and I would like to know, if somebody knows, what the
standard is.  And I assume there is no national policy, because
then that would be the standard.

Tr. pp. 16-17.

### III.  LEGAL DISCUSSION

As demonstrated below and acknowledged by the Court, the relevant
statutes, guidance from the U.S. Sentencing Guidelines, and case law provide
the United States sole discretion concerning the decision whether to file a
motion seeking a downward departure based on a defendant's substantial
assistance, and broad latitude in defining what constitutes "substantial
assistance."  *See Wade v. United States*, 504 U.S. 181 (1992).

"Upon motion of the Government, the court shall have the authority to
impose a sentence below a level established by statute as a minimum sentence
so as to reflect a defendant's substantial assistance in the investigation or
prosecution of another person who has committed an offense."  18 U.S.C. §
3553(e).  "Such sentence shall be imposed in accordance with the guidelines
and policy statements issued by the Sentencing Commission."  *Id*.  In turn, the
U.S. Sentencing Guidelines provide that, "[u]pon motion of the government

11

stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1.

Thus, the government has the power, but not the duty, to file a substantial assistance motion. *Wade*, 504 U.S. at 185. Without such a motion, the district court may not review whether the defendant in fact offered substantial assistance. *See United States v. Forney*, 9 F.3d 1492, 1499-1502 & n.2 (11th Cir. 1992) ("The district court and, consequently, this court do not evaluate the assistance rendered by a defendant offering cooperation as a term of his plea agreement unless and until the government makes a 5K1.1 motion for downward departure based on substantial assistance. . . . Thus, the courts are precluded from intruding into prosecutorial discretion."). Absent an unconstitutional motive, the court cannot order the filing of a substantial-assistance motion. *Wade*, 504 U.S. at 185-86.

When the United States files a substantial-assistance motion on a defendant's behalf, the U.S. Sentencing Guidelines provide the court a non-exhaustive list of factors to consider in fashioning an appropriate reduction, including: (1) the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information

or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and (5) the timeliness of the defendant's assistance.  U.S.S.G. § 5K1.1.  The commentary to section 5K1.1 instructs the court that "substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain."  U.S.S.G. § 5K1.1 cmt. n.3.

A defendant's willingness to cooperate against another individual does not necessarily rise to the level of "substantial assistance" sufficient to warrant the filing of a U.S.S.G. § 5K1.1 motion.  "Substantial assistance" generally requires that the defendant's assistance yield results that are useful to the United States, not merely that the defendant expended substantial effort or good faith in attempting to assist.  *United States v. Gonsalves*, 121 F.3d 1416, 1419 (11th Cir. 1997).

As an initial matter, the United States notes that the internal communications and discussions that individuals in a United States Attorney's Office rely upon in reaching a decision in any particular case are generally protected from disclosure pursuant to the deliberative process privilege.  *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  A form of executive

privilege, the deliberative-process privilege covers deliberative, pre-decisional communications within the Executive Branch, and exists, in part, to encourage the candid and frank exchange of ideas in the agency's decision-making process. *See United States v. Nixon*, 418 U.S. 683 (1974). Intra-office communications in a United States Attorney's Office leading up to an official course of action pursued by that office generally fall under the deliberative-process privilege. *See, e.g., In re United States*, 398 F.3d 615, 618 (7th Cir. 2005) (*per curiam*); *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004) (holding that, "except with extraordinary justification a judge may not inquire why or how the United States Attorney decided to file a [particular] motion"). Thus, the decision-making process in any particular case in the MDFL or other districts whether to file a motion to reflect a defendant's substantial assistance are generally protected from disclosure.

Without waiving any applicable privileges, the United States advises the Court that the factors considered in the MDFL in evaluating whether a defendant has provided "substantial assistance" are consistent with the section 5K1.1 factors noted above and with the United States Attorney's Manual (which applies to all U.S. Attorney's Offices). Our Office considers a broad range of factors, including, but not limited to: (1) the significance and usefulness of the defendant's information; (2) whether the defendant has

testified in grand jury or at trial; (3) the truthfulness, completeness, and reliability of the defendant's information or testimony; (4) the extent to which the defendant's assistance led to one or more co-defendants pleading guilty; (5) whether the defendant has merely provided historical information or has instead provided proactive cooperation (*e.g.*, making controlled phone calls or wearing a wire); (6) the number of targets as to which the defendant has substantially furthered the investigation or prosecution; (7) the nature of the targets against whom the defendant has cooperated (*i.e.*, whether the target is a low-level or high-level offender); (8) the danger or potential danger to the defendant and the defendant's family resulting from the defendant's assistance; and (9) the timeliness of the defendant's cooperation.  The above represent merely some of the most common factors the MDFL considers; it is not an exhaustive list.

## IV.  RESPONSE TO COURT'S INQUIRY

Here, the Court expressed concern that the United States had not filed a substantial-assistance motion for Montano, even though he was the third defendant in a three-defendant case, to agree to cooperate or to provide truthful information.  The Court stated that it appeared that there was some disparity in the sentencing of defendants in similar cases in other districts (*e.g.*, the SDNY).  Based on the Eleventh Circuit law (*Pertuz-Pertuz*) that limits the

authority of the Court to sentence a defendant below the 10-year mandatory minimum and DOJ policies requiring the charging of mandatory minimum offenses, the only mechanism whereby a Court could sentence a defendant below ten years would be via a substantial-assistance motion.  Thus, the Court's inquiry appears to have been focused on possible disparities in the filing of such motions as an explanation for why all "boat" defendants in the same case in other districts have been sentenced well below the 10-year mandatory minimum.

In response to the Court's request, the undersigned contacted other districts that prosecute similar "boat" cases, including the SDFL.  As noted above, the MDFL and SDFL prosecute a significant number these "boat" cases nationwide.  Other offices prosecuting these cases include, but are not limited to, the District of Puerto Rico, DOJ's Narcotics and Dangerous Drugs Section in Washington, D.C., and the SDNY.  Again, without waiving the deliberative-process privilege, the United States notes that, based on the undersigned's discussions with other districts, those districts also would not have filed a substantial assistance motion for a defendant in Montano's situation.  Those districts that were consulted have similar practices as it relates to the filing of substantial-assistance motions in "boat" cases.

The above discussion leaves unanswered the question as to the reason(s) why sentences imposed in other districts may fall below the 10-year, mandatory-minimum sentence even where substantial-assistance motions are not filed.  First, as noted above, there are few reported decisions that preclude the use of the safety-valve provisions to sentence a defendant prosecuted under the MDLEA below the 10-year mandatory minimum.  Second, upon information and belief, a review of plea agreements filed in "boat" cases in some of the other districts reflect that those defendants pleaded guilty to offenses that did not require imposition of the 10-year, mandatory-minimum sentence.  Such outcomes can be attributed to the unique facts and circumstances of a particular case or policies relating to allowing defendants to plead guilty in a manner that does not implicate the 10-year, mandatory-minimum sentence.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By:   */s/ W. Stephen Muldrow*
      W. STEPHEN MULDROW
      Assistant United States Attorney
      U.S. Attorney's Office No. 078
      400 N. Tampa Street, Suite 3200
      Tampa, Florida 33602-4798
      Telephone:   (813) 274-6000
      Facsimile:   (813) 274-6358
      E-mail:w.stephen.muldrow@usdoj.gov

17

**U.S. v. Mina Valencia et al.**        **Case No. 8:16-cr-197-T-35AEP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2017, I electronically filed the
foregoing with the Clerk of the Court by using the CM/ECF system which
will email a notice of electronic filing to the following:


Irina Hughes, Esq.
Assistant Federal Public Defender

Timothy James Fitzgerald, Esq.

Grady Irvin, Esq.


By:    */s/ W. Stephen Muldrow*
W. STEPHEN MULDROW
Assistant United States Attorney
U.S. Attorney's Office No. 078
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail:w.stephen.muldrow@usdoj.gov